IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSE CALLOWAY, IV,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 24-CV-2320** |
| | : | |
| **TEMPLE UNIVERSITY** | : | |
| **COLLEGE, et al.,** | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES, J.                                                         AUGUST 5, 2024

      Currently, before the Court is a Second Amended Complaint ("SAC") filed by Plaintiff Jesse Calloway, IV. Calloway brings this *pro se* civil action alleging violations of his civil rights. For the reasons set forth, the SAC is dismissed.

**I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[1]

      Calloway filed an initial Complaint on May 30, 2024. (*See* ECF No. 1.) The caption identified the "Jesse Calloway IV Estate & Trust" as the Plaintiff, section I.A. of the form Complaint listed the Plaintiff as "Jesse Calloway IV," and the Complaint was signed by "JCIV Estate and trust." (*See id.* at 1, 5.) Calloway had neither paid the required filing fees nor submitted an application to proceed *in forma pauperis*. By Order dated June 6, 2024, the Court directed Calloway to either pay the required fees or submit an application to proceed *in forma pauperis*. (ECF No. 4.) The Court further directed that, to the extent that a trust or an estate was a plaintiff in this case, such trust or estate must have licensed counsel enter an appearance on its behalf and must pay the $405 in fees. (*Id.*) On June 10, 2024, Calloway filed an Amended Complaint,

---

[1]      The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

clarifying that neither a trust nor an estate is the Plaintiff in this matter.  (*See* ECF No. 5 at 6.)  He also submitted an application to proceed *in forma pauperis*.  (ECF No. 6.)

In the caption of the Amended Complaint, Calloway named as Defendants: Temple University College, Temple University Police, Richard M. Englert, Jennifer Griffin, Enoch McCoy, Monica H. Padilla, P.O. Garrett, and P.O. Austin.  (*See* Am. Compl. at 1.)  Calloway alleged that his rights were violated during several interactions with Temple University police officers over the years.  Referring to himself in the plural, Calloway claimed that on March 30, 2024, at approximately 10:00 p.m., at 11th Street between Berks and Montgomery Streets, "[a] Temple University Police Officer was driving down the street at 12 MPH for no reason.  We had to use the restroom really bad.  We attempted to go around the officer, but he moved over to prevent us from going around."  (*Id.* at 3.)  Calloway asserted that "[t]his is an ongoing issue with Temple Police since April 2009."  (*Id.*)  He claimed that in 2009, "we had a officer put a gun to our head over a license plate being in our back window."  (*Id.*)  Calloway contended that this officer "was in her own personal vehicle with nothing indicating that she was an officer."  (*Id.*)  According to Calloway, he had just purchased the vehicle "as a graduation gift for ourselves from the auction and was on our way to grab some screws (for the plate)."  (*Id.*)  He claimed that Temple University police "pulled their guns on us again for no reason at all" in September 2019.  (*Id.*)  As alleged, Temple University police "pulled our son['s] mom over and took our car illegally" in February or March 2020.  (*Id.*)  He also asserted that "the officer who put the gun to our head" also threatened in 2022 "to lock [him] up" because he chose not to speak to her.  (*Id.*)

In a June 27, 2024 Memorandum and Order, the Court screened Calloway's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and determined that he had failed to plead plausible constitutional claims.  (*See* ECF No. 6 and 7.)  The Court found that Calloway did not

allege a basis for a claim against any of the individual Defendants because he failed to allege the personal involvement of each in an alleged constitutional violation, and failed to plead sufficient facts for the Court to determine whether the named individuals were state actors. Calloway also failed to plead a plausible § 1983 claim against Temple University. Consequently, Calloway's claims against Temple University College, Richard M. Englert, Jennifer Griffin, Enoch McCoy, Monica H. Padilla, P.O. Garret, and P.O. Austin were dismissed, without prejudice, pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim. Additionally, because Temple University Police as an entity is not a proper defendant in a § 1983 action, it was dismissed with prejudice. The Court also explained that, to the extent he raised claims based on any injuries suffered by the mother of his child, Calloway lacked standing to raise such claims and could not represent her in federal court because he is not an attorney. Furthermore, the Court noted that Calloway's allegations based on events that occurred prior to May 30, 2022, may be time-barred. Calloway was given thirty-days leave to file an amended complaint, to the extent that he could cure the deficiencies noted by the Court.

On July 26, 2024, Calloway filed the SAC.[2] (ECF No. 9.) In the SAC, Calloway names as Defendants Temple University, "P.O. Aken 2294," P.O. Garrett, Richard M. Englert, P.O.

---

[2] Calloway submitted a form complaint as well as a document titled "Schedule A," (ECF No. 9), and exhibits (ECF No. 10), which the Court will consider together as comprising the SAC. (*See* ECF No. 9 at 1-8.) The exhibit consists of a May 23, 2022 email communication from Calloway to city officials regarding the actions of Temple University police officers. (See ECF No. 10.) He also attached to the SAC a "Durable Power of Attorney," which is replete with sovereign citizen verbiage. (ECF No. 9 at 9-13.) "[L]egal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is frivolous. *See United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan); *United States v. Crawford*, No. 19-15776, 2019 WL 5677750, at *1 (D.N.J. Nov. 1, 2019) (holding that criminal defendant's attempt to use fake UCC financing statements against prosecutor were frivolous); *Banks v. Florida*, No. 19-756, 2019 WL 7546620, at *1 (M.D. Fla. Dec. 17, 2019), *report and recommendation adopted*, 2020 WL 108983 (M.D. Fla. Jan. 9, 2020) (collecting cases and stating that legal theories espoused by sovereign citizens have been consistently rejected as "utterly frivolous, patently ludicrous, and a waste of . . . the court's time, which is being paid by hard-earned tax dollars").

Austin, Jennifer Griffin, Enoch McCoy, and Monica H. Padilla. (SAC at 1, 2.) Calloway asserts that "[a]s a living man who is a citizen of heaven and resides inside of the Pennsylvania territory of the republic," the Temple University Police Department does not have jurisdiction over him. (*Id.* at 6.) His claims again pertain to series of encounters with various Temple University police officers beginning in 2011.[3]

Calloway asserts that he was pulled over on May 30, 2011, by "officer #2246" in an AutoZone parking lot because his license plate was improperly displayed.[4] (*Id.* at 7.) Calloway claims that the officer put a gun to his head and threatened to blow his head off. (*Id.*) As alleged, the officer was in a personal vehicle and not a marked police car. (*Id.*) He contends that the same officer threatened to arrest him in September 2022 while he worked as a paramedic and dropped a patient off at the hospital. (*Id.*)

Calloway also claims that he was pulled over on the 2200 block of N. 11th Street on February 29, 2020, by "Temple police officer #2350" who was driving a black, unmarked car with dark tints, and that the officer refused to "give his name or any other identifying markers." (*Id.*) Calloway alleges that "Officer #2350 began to threaten us with physical harm and challenged us to a fist fight." (*Id.*) At the time, Calloway was a Pennsylvania corrections officer and in uniform. (*Id.*) Calloway requested a supervisor but was refused. (*Id.*) He claims that he was harassed and his car was unlawfully impounded. (*Id.*) According to Calloway, "the ticket was thrown out as Temple didn't have the authorization to pull our vehicle over and was outside of their jurisdiction."

---

[3]     Calloway again presents his allegations in a disjointed manner and refers to himself in the first-person plural throughout the SAC. The Court recounts his allegations in chronological order for the sake of clarity.

[4]     Calloway acknowledges "the courts stance on this is that its past the time to ask for a civil judgment" but "would like the courts to factor in" the incident. (SAC at 7.)

4

(*Id.*)  Calloway also claims that on February 3, 2021, he was harassed by "car 176" as it drove down the street and someone yelled a curse at him for no reason.  (*Id.* at 6.)

Calloway further alleges that he was pulled over at 11th and Norris Streets on May 21, 2022, by a police officer who refused to give his name and badge number.  (*Id.*)  According to Calloway, a Temple University police officer pulled up to where his car was parked and blocked him in because Calloway refused to identify himself during the traffic stop.  (*Id.*)  He later received a ticket in the mail.  (*Id.*)  Calloway claims that he was unlawfully detained during this incident and that it occurred outside of Temple's jurisdiction.  (*Id.*)  He further alleges that a Temple University police officer pulled up outside of his house on December 4, 2022, and harassed Calloway by watching the house for a long period of time.  (*Id.*)

Calloway alleges that Officer Garrett followed Calloway on May 22, 2023 and harassed him, refusing to provide his name or badge number.  (*Id.*)  As alleged, he pulled into the parking lot of Calloway's development to harass him further and threatened Calloway.  (*Id.*)  Calloway filed a complaint against Officer Garrett on May 30, 2023.  (*Id.*)  He also asserts that when he walked his son to school on September 19, 2023, P.O. Aken harassed and threatened him.  (*Id.* at 3.)  Calloway filed a second complaint against Officer Garrett on October 24, 2023 "for saying inappropriate things to me while walking my children to school in the morning."  (*Id.* at 6.)  He claims that the sergeant "became aggressive."  (*Id.*)

When Calloway was driving on March 30, 2024, a Temple University police officer was driving below the speed limit on 11th Street, causing Calloway to attempt "to go around him as we had to use the restroom.  We beeped our horn at him and he attempted to pull us over."  (*Id.* at 3, 6.)  Calloway refused to stop and the owner of the car received a ticket in the mail.  (*Id.*)  Calloway claims that his right to travel again was interrupted and he was unlawfully detained.  (*Id.* at 6.)

Calloway attempted to speak with the officer's supervisor to lodge a complaint, but the supervisor refused to give Calloway the officer's name or badge number and threatened to "302" Calloway. (*Id.* at 3, 6.)

On May 30, 2024, Calloway stopped by the Temple University police department to speak with "someone in regards to the officers names, badge numbers, and bond numbers as there had been a series of incidents that had occurred" but was spoken to aggressively by a detective who refused to identify himself or give Calloway the information he requested. (*Id.* at 6-7.) Based on these interactions, Calloway asserts that he has been harassed and unlawfully detained. (*Id.* at 7.) As relief, Calloway seeks monetary damages and "[a]n order of travel rights as we do not operate in commerce." (*Id.* at 4, 7.)

## II.   STANDARD OF REVIEW

Because Calloway is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the SAC if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

6

As Calloway is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245); *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and "apply the applicable law, irrespective of whether the pro se litigant mentioned it be name," *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.   DISCUSSION

The Court understands Calloway to assert that his rights were violated at various times commencing in 2011 by Temple University police officers. Although he provides additional factual support for his claims, Calloway's SAC is undeveloped, disjointed, and fails to allege plausible claims for the same reasons as did the Amended Complaint. As he asserts federal question jurisdiction based on "unlawful interference with our rights," (*see* SAC at 2), the Court will liberally construe the SAC as asserting constitutional claims brought pursuant to 42 U.S.C. § 1983.

Section "1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal quotations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Local governments and municipalities are considered persons under § 1983. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation. *Id.* at 691. Rather, "under § 1983, local governments are responsible only for 'their own illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).[5]

---

[5]      There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not

Calloway's SAC, even when liberally construed, fails to allege plausible constitutional claims. As an initial matter, Calloway once again has failed to plead a plausible § 1983 claim against Temple University. Temple University has been held to be a state actor. *See Krynicky v. University of Pittsburgh*, 742 F.2d 94,103 (3d Cir. 1984) (holding that University of Pittsburgh and Temple University are state actors based on their close relationship with the state government); *see also Moore v. Temple Univ.*, No.13-5079, 2014 WL 12775012, at *2 (E.D. Pa. Apr. 29, 2014) (holding that "Temple University, as well as those it employs, are sufficiently connected to the Commonwealth as to make them state actors within the meaning of section 1983" and collecting cases). However, as noted earlier, liability arising from § 1983 violations cannot be imposed under the doctrine of *respondeat superior*. *See Monell*, 436 U.S. at 691. Thus, Calloway cannot assert liability against Temple University solely on the basis that it employs police officers. Calloway has not alleged that Temple University had a policy or custom that caused a constitutional violation. Accordingly, any claim against Temple University is dismissed as not plausible.

Furthermore, Calloway has not alleged any basis for a claim against Defendants Richard M. Englert, Jennifer Griffin, Enoch McCoy, Monica H. Padilla, and P.O. Austin. As the Court noted above, in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode*, 845 F.2d at 1207. Although Calloway names Richard M. Englert, Jennifer Griffin, Enoch McCoy, Monica H. Padilla, and P.O. Austin as Defendants, (*see* SAC at 1-2), he alleges no facts tying these

---

specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

individuals to the events alleged in the SAC.  In other words, Calloway has not explained what
these individuals did or did not do to violate his constitutional rights.  Calloway has not even pled
sufficient facts for the Court to determine whether these individuals are state actors.  Accordingly,
all claims against Defendants Richard M. Englert, Jennifer Griffin, Enoch McCoy, Monica H.
Padilla, and P.O. Austin are dismissed.

Calloway's claims against P.O. Garrett and P.O. Aken are based on unspecified
"harassment" and must be dismissed.  Calloway alleges that Officer Garrett followed him on May
22, 2023, and harassed and threatened him, refusing to provide his name or badge number.  (SAC
at 6.)  Calloway also claims that when he walked his son to school on September 19, 2023, P.O.
Aken again harassed and threatened him.  (*Id.* at 3.)  Calloway filed a complaint against Officer
Garrett on May 30, 2023, and again on October 24, 2023 for "saying inappropriate things" to
Calloway as he walked his children to school.  (*Id.* at 6.)  As pled, Calloway has failed to adequately
develop any claim against either P.O. Garrett or P.O. Aken.  Even under a liberal reading of the
SAC, the Court cannot discern a plausible constitutional violation based on Calloway's wholly
conclusory allegations against these Defendants.  Calloway simply has not met the *Iqbal* pleading
standard with respect to any potential constitutional violation based on the alleged harassment.
*See Spearman v. Sotello*, No. 18-2595, 2018 WL 3614042, at *3 (E.D. Pa. July 27, 2018)
("Spearman may not rely on conclusory allegations — *e.g.,* that he was "harassed" — to state a
claim."); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("Because the plaintiffs
here have not nudged their claims across the line from conceivable to plausible, their complaint
must be dismissed.").

Additionally, Calloway's allegations based on events that occurred prior to May 30, 2022,
are time-barred.  To the extent that Calloway seeks to raise claims pursuant to § 1983, the

timeliness of a § 1983 claim is governed by the limitations period applicable to personal injury actions of the state where the cause of action arose.  *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009).  The Pennsylvania statute of limitations for a personal injury action is two years.  *Id.* at 634 (citing 42 Pa. Cons. Stat. § 5524(2)); *see also Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Thus, the limitations period applicable to Calloway's § 1983 claims is two years.  A claim accrues "when a plaintiff has a complete and present cause of action, that is, when he can file suit and obtain relief."  *Dique*, 603 F.3d at 185 (quotations omitted).  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [her] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014).  Based on the allegations pertaining to alleged traffic stops and detentions, Calloway knew or should have known of any possible constitutional injury at the time he was allegedly stopped and detained.  *See Ojo v. Luong*, 709 F. App'x 113, 116 (3d Cir. 2017) (*per curiam*) ("Most of [plaintiff's claims] accrued when defendants conducted their searches and seizures on July 11, 2011, because [plaintiff] knew or should have known the basis for these claims at that time.").  Here, Calloway filed the initial Complaint on May 30, 2024.  Thus, any claims based on traffic stops that occurred prior to May 30, 2022, are time-barred.  Further, there are no allegations in the Complaint that would support a basis for equitable tolling of the claims.  *See Lloyd v. Ocean Twp. Counsel*, 857 F. App'x 61, 64 (3d Cir. 2021) (*per curiam*).[6]

---

[6]      To the extent Calloway seeks to bring claims against unnamed Temple University police officers for detaining him and restricting his travel on May 21, 2022, Calloway's allegations are vague and undeveloped, to the extent they are not time-barred.  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The temporary detention of an individual during a traffic stop is a "seizure" of "persons" under the Fourth Amendment.  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  Where police have directly witnessed a traffic violation, a traffic stop is a reasonable seizure under the Fourth Amendment.  *See United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997) ("[A] traffic stop is

11

## IV.    CONCLUSION

lawful under the Fourth Amendment where a police officer observes a violation of the state traffic regulations."); *see also Kansas v. Glover*, 589 U.S. 376, 386 (2020) (traffic stop was lawful where "[u]nder the totality of the circumstances of this case, Deputy Mehrer drew an entirely reasonable inference that Glover was driving while his license was revoked"). "A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (internal citations omitted). "Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id.* at 355; *see also* 75 Pa. Cons. Stat. § 6308(b). "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355. The length of any additional investigation and detention after a traffic stop, including subsequent searches of the passengers, must be supported by reasonable suspicion based on the facts and circumstances confronting the officer. *United States v. Hurtt*, 31 F.4th 152, 159 (3d Cir. 2022).

Calloway has not provided sufficient allegations to support a plausible inference that his Fourth Amendment rights were violated. He alleges that "a police officer" pulled him over and "he sent us a ticket in the mail." (*See* SAC at 6.) He also claims that "Temple Police" arrived and blocked his car so that he could not leave, because Calloway refused to identify himself. (*Id.*) Calloway does not allege sufficient facts about the stop. Without additional factual allegations, it is impossible to assess whether the officer was justified in the initial traffic stop and whether any extension of the initial stop was justified by reasonable suspicion. Thus, any claim Calloway intends to assert based on the officers' alleged violation of his Fourth Amendment rights is undeveloped. *See, e.g., Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) ("To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." (citation omitted)).

Furthermore, the United States Supreme Court has explained that the right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). However, the existence of "a constitutional right to travel . . . does not restrict the State from regulating the use of its roads as a matter of its police powers." *Knox v. Pcobasco*, No. 86-2367, 1986 WL 6310, at *1 (E.D. Pa. June 4, 1986) (citing *United States v. Guest*, 383 U.S. 745, 759 n.17 (1966); *see also Carroll v. City of Philadelphia*, No. 87-0592, 1989 WL 114721, at *4 (E.D. Pa. Sept. 29, 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) ("It is well established that the police powers constitutionally permit regulation of vehicles traveling the public roadways."). Nothing in Calloway's SAC plausibly suggests that his right to interstate travel was implicated. *See Davis v. Doe*, No. 23-4863, 2024 WL 1660542, at *5 (E.D. Pa. Apr. 17, 2024) (dismissing right to travel claim because plaintiff alleged only that officers initiated a traffic stop for "non-traffic stop reasons," searched plaintiff and his vehicle, and called a tow company to tow the vehicle); *Aikens v. New Castle County Police Dep't*, No. 21-350, 2021 WL 5051145, at *4 (D. Del. Nov. 1, 2021) (dismissing with prejudice right to travel claim when plaintiff was detained for thirty minutes while receiving a traffic ticket because allegations did not suggest infringement on interstate travel).

For the foregoing reasons, the Court will dismiss Calloway's Second Amended Complaint, with prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Calloway had two opportunities to allege plausible claims.  The Court concludes that a further opportunity to amend would be futile.  *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by *pro se* litigant would be futile when litigant "already had two chances to tell his story").  An appropriate Order follows, dismissing this case.

*NITZA I. QUIÑONES ALEJANDRO, J.*